

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 9, 2018

**BY ECF AND FAX**

The Honorable Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007
Fax: (212) 805-6382

      Re:    United States v. Jose Ayala, 16 Cr. 809 (VM)

Dear Judge Marrero:

      The Government respectfully submits this letter in advance of defendant Jose Ayala's sentencing, which is scheduled for April 13, 2018. On October 13, 2017, pursuant to a plea agreement (the "Plea Agreement"), the defendant pled guilty to a lesser-included offense of Count One of Indictment 16 Cr. 809 (VM), admitting his participation in a conspiracy to distribute and possess with the intent to distribute cocaine base, commonly known as "crack cocaine," in violation of Title 21, United States Code, Sections 841 and 846. As outlined in the Plea Agreement, under the United States Sentencing Guidelines (the "Guidelines"), the Guidelines range applicable to the defendant's conviction (the "Guidelines Range") is 78 to 97 months' imprisonment. Based on a consideration of the Guidelines and the other factors set forth in Title 18, United States Code, Section 3553(a), the Government respectfully submits that the offense warrants a sentence within the Guidelines Range.

## Background

      A.  **The Offense Conduct**

      The charges in this case arose out of an investigation into narcotics trafficking in the vicinity of Stratford Avenue in the Bronx, which was conducted by the New York City Police Department ("NYPD") and the Department of Homeland Security, Homeland Security Investigations ("HSI"). (*See* Presentence Investigation Report ("PSR"), Dkt. No. 86, ¶¶ 16-26.) In connection with the investigation, over the course of about a year, undercover officers and confidential informants made about 60 purchases of cocaine base (commonly known as "crack") from those charged in the Indictment. (PSR ¶ 24.) Ayala, specifically, worked with others or directly sold crack cocaine to an undercover officer or a confidential informant on numerous occasions. Ayala is being held responsible for conspiring to distribute between 280 and 840 grams of crack cocaine. (PSR ¶ 30.)

April 9, 2018
Page 2

### B. The Guidelines Calculation

On October 13, 2017, pursuant to a plea agreement with the Government, the defendant pleaded guilty before Magistrate Judge Parker to Count One of the Indictment, charging him with conspiracy to distribute crack cocaine. (PSR ¶ 3.) Although Count One charged a conspiracy to violate Title 21, United States Code, Section 841(b)(1)(A), the parties agreed to (and the Court accepted) a plea to a conspiracy to violate Title 21, United States Code, Section 841(b)(1)(C), *i.e.*, a provision that does not carry a mandatory minimum sentence.

In the plea agreement, the parties stipulated that the base offense level is 30 pursuant to United States Sentencing Guideline ("U.S.S.G.") § 2D1.1(c)(7), because the amount of crack involved was between 280 and 840 grams. (PSR ¶ 5). After taking into account acceptance of responsibility points, the overall offense level is 27. (PSR ¶ 7). Because the defendant's Criminal History Category is II, the applicable Guidelines range is 78 to 97 months' imprisonment. (PSR ¶¶ 8-9).

The Probation Office calculated the same Guidelines range, and recommends a below-Guidelines sentence of 60 months' imprisonment. (*See* PSR at 20).

### Discussion

A sentence within the Stipulated Guidelines Range is appropriate for Ayala to achieve the goals of sentencing, and principally the need to provide just punishment, promote respect for the law, and foster deterrence.

As a preliminary matter, this case involves the distribution of significant amounts of crack by members of a violent street gang, with whom Ayala chose to associate. This conduct rendered the neighborhood unsafe and unlivable for its law-abiding residents. Ayala—who, as noted above, is known to have participated a number of sales to undercover officers or confidential informants—is particularly responsible for creating this type of environment, because he was part of a conspiracy in which he and his co-conspirators worked to ensure that drugs were readily available to others.

Ayala's history shows that over the years, he made little effort to avoid a criminal lifestyle. He "briefly" held a job in 1997, and did not attempt to work again until 2016, with "little account" of how his time during the remaining years was spent. (PSR ¶ 53). Ayala's mother suffers from various ailments, yet Ayala—despite being in good health and lacking any mental or emotional problems (PSR ¶ 63, 67) reportedly declined to seek a job until his mother was unable to work, because he "wasn't into working" and he knew his mother would support him. (PSR ¶ 82.)

Ayala is now a man in his mid-30s. He cannot blame his actions on the impulsiveness and ignorance of youth. Nonetheless, his history in this very case shows he requires additional specific deterrence. After the Court released Ayala on bond, Ayala continued to violate the terms of his pretrial release: using cocaine, making frequent unauthorized stops, and lying with regard to his whereabouts. (PSR ¶¶ 15, 78.) Indeed, one of the mothers of Ayala's children even initiated

April 9, 2018
Page 3

contact with the Probation Office to report that as late as December 2017, Ayala appeared to be "reverting back" to his criminal activity. (PSR ¶ 60.) He also apparently lied or omitted important facts during his interview with the Probation Office. (*See* PSR ¶ 64 (noting that the defendant "initially provided" a story which he then "amended" about a particular injury); *id.* ¶ 69 (noting the defendant "was not entirely forthcoming regarding his personal history"); *id.* ¶ 86 (noting that the defendant did not provide any financial documents).

In sum, the defendant chose to engage, repeatedly, in incredibly serious violations of the law, rendering his community unlivable for many others. He should be held accountable for his decisions. For the foregoing reasons, the Government respectfully submits that a sentence within the Stipulated Guidelines Range is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a). [1]

## Conclusion

For the reasons set forth above, the Government respectfully submits that the Court should impose a term of incarceration within the Stipulated Guidelines Range.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: _/s_____
Jessica K. Fender
Drew Skinner
Assistant United States Attorneys
(212) 637-2276 / 1587

cc:   A. James Bell, Esq.

---

[1] For the Court's convenience, the Government notes that to date, Steven Guzman is the only other defendant to have been sentenced on this Indictment. This Court sentenced Guzman on January 12, 2018 to a term of 40 months, to run concurrent to the sentence Guzman received in Case No. 16 Cr. 200 (AH), in which Guzman was charged with trafficking heroin.